SAMUEL BRAUSE et al., Appellants, *v.* ANTONIO PARISI et al., Respondents.

First Department, December 20, 1948.

*Maurice Flam* (*Flam & Flam,* attorneys), for appellants.

*Samuel R. Rakosi* of counsel (*Samuel R. Rakosi,* attorney for Leo Hubsch, respondent; *Alexander Cavallari,* attorney for Antonio Parisi, respondent), for respondents.

*Alfred Weinstein* of counsel (*Joseph Goldberg* and *Joseph Jay* with him on the brief; *Nathan W. Math,* attorney), for Temporary City Housing Rent Commission, *amicus curiæ.*

DORE, J.  The question presented is whether subtenants who occupy residential space constituting a portion of a building

leased for both residential and commercial purposes, and who have tendered to the owners the rent due for their apartments are protected as statutory tenants after the main tenant, lessee of the entire building, has defaulted in payment of rent and in summary proceedings to dispossess all the tenants.

By a divided court, the Appellate Term, reversing a Municipal Court order in the landlords' favor, held that the subtenants are protected by Local Law No. 66 of 1947 of the City of New York; and, as the landlords before commencing the summary proceeding concededly had not procured the eviction certificate from the Temporary City Housing Rent Commission required by that law, the court dismissed the landlord's petition as against the subtenants, without prejudice. By permission of the Appellate Term, the landlords appeal.

The property, a three-story and basement building, is at 221 Second Avenue, in the borough of Manhattan, city of New York. The two subtenants, with their families, have occupied six-room apartments on the top and next to top floors (the third and second floors respectively) for residential purposes on a month to month basis for upwards of twelve years, and paid therefor $40 and $50 per month, respectively. They have not defaulted in payment of any rent due for their apartments, but made tender to their new landlords and on refusal have deposited the rent with the clerk of the court.

On July 30, 1942, one Harry Cohen, the then owner of the property, leased it to a restaurant corporation for a term ending July 31, 1947. The lease described the premises demised as the " entire building consisting of a restaurant and bar and grill *and two floors for residential purposes* "; the tenant agreed to use the rented premises only for a restaurant and bar " *and for residential purposes* ". (Italics ours.) The corporation occupied the basement on the ground floor as a restaurant, bar and grill; the first floor was apparently unoccupied; the subtenants continued to occupy the second and third floor apartments, and paid their rent to the main tenant lessee or restaurant corporation.

The present owners, now the landlords herein, Samuel Brause and Milton Brause, bought the property on May 21, 1947, from one Betty Rosoff, who had purchased the property on May 17, 1947, from Harry Cohen expressly subject to the " existing written lease for the entire premises ". Almost immediately after the purchase and on May 23, 1947, the new landlords notified the restaurant corporation that the lease would not be

renewed upon its expiration on July 31, 1947, and if the tenant remained in possession thereafter it would be regarded as a statutory tenant at the emergency rent of $345 a month, a 15% increase over the rent reserved in the lease. The main tenant continued thereafter in possession, but in April, 1948, failed to pay the $345 rent then due.

The landlords thereupon commenced this summary proceeding, joining the subtenants as well as the main tenant to bind them by the final order; the main tenant defaulted, the subtenants defended. At the trial, the landlords conceded that the two apartments were controlled housing accommodations " insofar as their [the subtenants'] landlord is concerned." However, they took the position that, so far as the owners were concerned, the emergency rent laws relating to dwelling accommodations were inapplicable; in any event that this was a proceeding for nonpayment of rent and no eviction certificate was necessary; and that they were entitled to the payment of the full reserved rental of $345 for the entire premises, or possession of the entire building. The subtenants contended that their apartments were protected by the Federal and city rent control laws relating to dwelling accommodations; and that so long as they tendered, as they did, their respective rents of $40 and $50 per month they could not be dispossessed; and that a summary proceeding could not be commenced against them unless and until the landlords procured an eviction certificate from the City Rent Commission.

The trial court granted a final order in favor of the landlords against all defendants, with warrant to issue forthwith against all parties but execution as against the subtenants was stayed for two months. Thereupon the subtenants appealed to the Appellate Term; that court reversed the final order so far as appealed from and dismissed the landlords' petition insofar as it affected the subtenants.

It may be conceded that under the common law these subtenants would have no protection after the main tenant had been evicted as there would be no privity of contract or estate between the owner and such subtenant. But the local law, passed precisely because normal conditions under which the common law operated were no longer present, expressly declares a serious public emergency exists in the city by reason of the shortage of " apartments " and unless evictions from such accommodations are regulated the abnormal conditions created will produce a serious threat to the health and safety and welfare of

the city's inhabitants. It declares the public policy of the city to impose restrictions "upon the rights of eviction of tenants from *apartments* in the city" (italics ours) to alleviate the present housing emergency. This was no legal fiction. The acute shortage of dwelling accommodations was in truth a major emergency of the first magnitude. If tenants were evicted as though normal conditions prevailed, it would be impossible for them to find any dwelling place in the city to house themselves and their families.

Subtenants, such as those here in question, occupying apartments in houses leased in part for business purposes, are numerous and widespread throughout the city of New York. The language of the local law shows it was intended to protect them as statutory tenants; and on this record they are such at least so far as to require the landlord to procure a certificate of eviction before commencing a dispossess proceeding. The law in question amended the Administrative Code of the City of New York by adding thereto section U 41–7.0. As thus amended, the code in part provides:

"Evictions. Except for non-payment of rent no tenant shall be removed from *any apartment* by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, *unless the commission shall certify* that one or more of the following grounds for such exclusion or eviction exists * * * [enumerating specified grounds not here relevant since admittedly this proceeding is not based upon any such grounds]." (§ U41–7.0, subd. c.)

Tenant is defined:

"A tenant, *subtenant,* lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any apartment as herein defined." (§ U41–7.0, subd. b, par. 5.)

Landlord is defined:

"An owner, lessor, *sublessor,* assignee or any other person receiving or entitled to receive rent for the use or occupancy *of any apartment* as herein defined or an agent of any of the foregoing." (§ U41–7.0, subd. b, par. 4.)

Apartment is defined:

"A room or group of rooms *rented* or offered for rent, *for dwelling purposes,* as a unit, in any building or structure, except a hotel, apartment hotel, lodging house rooming house, or housing accommodation as defined in section U41–9.0." (§ U41–7.0, subd. b, par. 3.)

Rent is defined:

" The consideration which the landlord is legally entitled to demand or receive for, or in connection with *the use or occupancy of an apartment.*" (§ U41–7.0, subd. b, par. 1.) (Italics ours.)

It thus appears that the subtenants herein, by the express terms of the local law, are within its protection. They have occupied these apartments for the past twelve years; they were in open and notorious occupancy for dwelling purposes when the present new owners purchased the property in 1948, from a vendor who had purchased expressly subject to the written lease, renting "two floors for residential purposes."

On the facts disclosed and the law applicable herein the absence of privity is not a bar to a statutory tenancy (see *Stern* v. *Equitable Trust Co.*, 238 N. Y. 267 [1924]). That case construed the purpose of the then existing emergency rent laws and pointed out that the relation created by the laws was not the conventional relationship of landlord and tenant. It is significant that under the present emergency rent laws the statutory definition of landlord and tenant has been held to give a receiver's or former owner's " tenant " in possession statutory protection against an owner who purchased in foreclosure, although such owner had no contract or privity with such tenant (*East Brooklyn Savings Bank* v. *Hickman Realty Corp.*, 272 App. Div. 638 [2d Dept., 1947]; *Home Savings Bank of City of Albany* v. *Hunter,* 180 Misc. 1; *Edison Savings & Loan Assn.* v. *Stamberger,* 184 Misc. 52).

The local law defines " rent " as " the consideration which the landlord is legally entitled to demand or receive for, or in connection with the use or occupancy of an *apartment.*" (Italics ours.) The subtenants have tendered the sums due for the use and occupancy of their apartments and therefore under the terms of the local law they are not in default in payment of their rent. That being the case, it was incumbent upon the landlords under the local law to procure an eviction certificate from the Temporary City Housing Rent Commission before commencing the summary proceeding against the subtenants. Since the landlords concededly failed to procure such certificate, it was proper for the Appellate Term to dismiss the petition against the subtenants.

In view of the foregoing conclusion, it is unnecessary to pass upon other contentions made by the subtenants. Nor is it necessary to discuss in detail numerous cases relied on which have arisen under the emergency commercial and business rent laws, since the city rent law here in issue relates only to resi-

dential space and was not relevant or controlling on the determination of such other cases. The business and commercial rent laws provide that a tenant may be removed from possession if he refuses to renew the prior lease upon substantially similar terms and conditions as are contained in such prior lease (L. 1945, ch. 3, § 8; L. 1945, ch. 314, § 8). Local Law No. 66 contains no such provisions. The absence of the provisions noted in the business and commercial rent laws is an additional ground distinguishing this case from the cases relied on and the reasoning supporting them.

If these two subtenants, occupying their apartments for dwelling purposes, may be summarily evicted on the default of the main tenant, thousands of others similarly situated may also be evicted. While the tenants herein raise no issue as to the landlords' good faith, a reversal of this order would offer to unscrupulous real estate operators who buy to evict, rerent and resell, a facile means to evade the law and its controlling purposes. Thus, a large apartment, housing 1,000 or more persons, could be leased to a compliant lessee who occupies a store on the avenue front; and on the lessee's default in payment of a single month's rent and subsequent default on trial of the summary proceedings, hundreds of families occupying the rest of the building for dwelling purposes only would automatically be evicted by simply serving them with notice of the summary proceeding against the defaulting main tenant. To avoid such results was one of the purposes of the law in question.

The above analysis of the law, its definitions and purposes indicates that no strained construction is necessary to sustain the Appellate Term's order. These sublessees, tenants using their portion of the premises exclusively for dwelling purposes, are within the very letter of the law as well as within its spirit and its dominating purpose. We hold that, on the facts here disclosed, the subtenants herein are protected by the local emergency rent law, and may not be dispossessed before the landlord first procures a certificate of eviction from the Temporary City Housing Rent Commission as required by Local Law No. 66. Such ruling will impose no undue hardship upon the owners above and beyond the burdens placed upon landlords generally by emergency rent laws which have compelled them to accept and retain thousands of statutory tenants with whom the landlord has no lease or conventional relationship of landlord and tenant.

The order of the Appellate Term appealed from should be affirmed, with costs and disbursements to the respondents and the summary proceedings as against the undertenants-respondents should be dismissed, with one bill of costs in all courts.

CALLAHAN, and SHIENTAG, JJ., concur; GLENNON, J. P. and COHN, J. dissent and vote to reverse for the reasons assigned in the opinion of EDER, J., in Appellate Term.

Determination affirmed, with costs and disbursements to the respondents, and the summary proceedings as against the undertenants-respondents dismissed, with one bill of costs in all courts.