Samuel J. Silverman, J.
This is an action by the City Rent and and Rehabilitation Administrator for an injunction to require defendants, the fee owner and the prime tenant of a rooming house, to restore or continue to furnish all furniture, equipment and services to the subtenant roomers and to restrain them from violating the Rent and Rehabilitation Law of the City of New York and the Rent and Eviction Regulations promulgated thereunder.
For the most part the facts have been stipulated. The premises involved are a rooming house of 66 units at 203 West 85th *845 Street, Manhattan. For a period before July 1, 1946 defendant Eichner, the owner of the fee, operated the premises as a rooming house. As of July 1, 1946 defendant Eichner sold the rooming house business to defendant Samuely, the prime tenant, and leased the property to defendant Samuely for 10 years from July 1, 1946 to June 30, 1956, with an option in the tenant to renew for 5 years. Defendant Samuely exercised his option to renew, extending the lease to June 30, 1961. In June 1, 1961 the lease was extended for an additional two years, to expire June 30,1963, with a right to cancel at any time after January 1, 1963 on 30 days’ written notice. On August 14, 1962 defendant Samuely, the prime tenant, gave notice of his intention to cancel the lease as of December 31,1962. On September 7,1962 defendants Eichner and Samuely agreed that the August 14,1962 notice properly cancelled the lease as of December 31,1962. On December 3, 1962 defendant Samuely gave written notice to the City Bent and Behabilitation Administration of his intention immediately after December 31, 1962 to remove his furniture and furnishings from the building and terminate his relationship with said property and requested an immediate hearing for the purpose of arranging for the landlord to take over the operation of said premises and to furnish the same. The prime tenant also stated that unless such arrangements were made with the landlord, the prime tenant would remove his furniture from the property on December 31, 1962 or immediately thereafter. In response to this letter the prime tenant received a letter from the District Bent and Behabilitation Director of the City Bent and Behabilitation Administration stating that “ Should the lessee terminate his relationship with the property as set forth in your letter, the landlord would be required to provide the roomers in the building with furniture, furnishings and services previously provided by the lessee.”
The fee owner has informed the City Bent and Behabilitation Administrator that if the prime tenant removes any furniture from the rooming house she does not intend to replace the furniture or to herself operate the premises as a rooming house or otherwise.
The fee owner is a woman aged 66 who resides at Long Beach, New York, and who has not operated any rooming house for the last 17 years. She states that her health is poor, that she has arthritis.
The prime tenant, Mr. Samuely, is also in poor health, complaining of hernia and an enlargement of the heart.
There is a dispute as to how much it would cost for the fee owner to refurnish the premises if the present furnishings were *846 removed. The testimony is that the present furnishings are in very poor condition. Apparently, depending on how adequately the premises are to be refurnished, it would cost between $4,000 and $20,000. The prime tenant has stated that he is willing to sell all furniture and furnishings in the building for $4,000.
All are agreed that the 66 roomers are entitled to the protection of the rent laws and that this is a proper case for the court to grant relief to that end. The parties suggest that the only question is whether the obligation to furnish the furniture and maintain the services shall be imposed on the fee owner or the prime tenant.
It is clear that unless this court grants relief the prime tenant will move out with his furniture, the fee owner will not furnish furniture or services, and the 66 roomers will be effectually evicted without any certificate from the City Bent and Eehabilitation Administrator and without any protection.
Local Law No. 20 of the Local Laws of the City of New York for the year 1962 (Administrative Code of City of New York, § Y41-11.0) provides: “§ Y41-11.0 — Enforcement.— a. When ever in the judgment of the city rent agency any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of subdivision nine of section one of the state enabling act, or section Y41-10.0 of this title, the city rent agency may make application to the supreme court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, or for an order directing the landlord to correct the violation, and upon a showing by the city rent agency that such person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order shall be granted without bond. Jurisdiction shall not be deemed lacking in the supreme court because the defense is based upon an order of an inferior court.” Section Y41-10.0-a makes it unlawful for any person “to do or omit to do any act, in violation of any regulation, order or requirement of the city rent agency ’ \
The Bent, Eviction and Eehabilitation Eegulations of the City Eent and Eehabilitation Administration provide :
“ Section 22. Services included in the maximum rent. Every landlord shall furnish with housing accommodations, the same dwelling space and the same essential services, furniture, furnishings and equipment as were furnished, or required to be furnished on April 30,1962 or any subsequent date determining the maximum rent.” * * *
*847 “ Section 35. Decrease of services; application, order or report.
‘ ‘ a. Until the accommodations become vacant, the landlord shall maintain the same dwelling space, essential services, furniture, furnishings and equipment as are required under Section 22 of these Regulations, unless and until he has filed an application to decrease the dwelling space, essential services, furniture, furnishings or equipment and an order permitting such decrease has been entered thereon by the Administrator.
‘1 b. On or after May 1, 1955, the removal of furniture or furnishings from housing accommodations rented as furnished, whether or not such removal is consented to by the tenant, shall constitute a decrease in service. ’ ’
It appears to me that the proposed removal of furnishings and discontinuance of services by the prime tenant and the, threatened failure to replace them by the fee owner, all without an order from the Administrator permitting the same, would constitute a violation of subdivision a of section 35, which this court has the power and the duty to enjoin, at least as to any party who is not exempt from the regulations.
The fee owner and the prime tenant each argue that he is exempt from the regulations and that the other has the duty under the regulations. I hold that neither is exempt from the regulations.
Landlord is defined in subdivision h of section 2 of the regulations, as follows: “‘Landlord.’ An owner, lessor, sublessor, assignee, or other person receiving or entitled to receive rent for the use and occupancy of any housing aceommodiation or an agent of any of the foregoing.” (See, also, Local Law No. 20, § Y41-3.0, subd. f.) The fee owner contends that she is not a landlord within the meaning of this regulation because she is not a person “ receiving or entitled to receive rent for the use and occupancy of any housing accommodation ”, in that the entire structure, as distinct from the individual units contained therein, is not a housing accommodation within the meaning of the regulations (§ 2, subd. e, par. [1]; § 2, subd. f, par. [1], cl. [a]).
I hold that the phrase in the definition of landlord, ‘ ‘ receiving or entitled to receive rent for the use and occupancy of any housing accommodation ”, does not modify the word “ owner ”. Any other interpretation would be inconsistent with the obvious intent of the Rent Law and Regulations to have an effective system of rent controls. (See, also, § 56, subd. b of the regulations where the word “ landlord ” rather clearly means the fee owner in such a situation as this.) At least so far as may be *848 necessary to protect the subtenant roomers, the owner is a landlord within the meaning of the rent regulations.
The prime tenant argues that he is exempt from the regulations because his lease has expired and he has no further relationship to the premises, except as he is required to remain there by the temporary injunction issued out of this court in this action, and his own desire for a peaceful solution.
Of course but for the rent law and regulations the prime tenant would be right. He has no contractual obligation either to the fee owner or to the roomers to remain in possession. But the rent regulations have imposed statutory duties and a statutory relationship on the parties which override the contractual relation between them. I see nothing more startling about requiring a long-term prime tenant to continue a relationship to the premises after the expiration of his lease than in imposing any of the duties which may be imposed by the rent regulations on a fee owner, e.g., forbidding him to withdraw the premises from the rental market. (See regulations, §§ 14, 59.)
Section 15 of the regulations provides:1 ‘ The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with the Rent Law or these Regulations.”
To permit the prime tenant to remove the furniture and to discontinue essential services without an order of the Administrator permitting the same would be inconsistent with subdivision a of section 35 of the regulations. Accordingly the provisions of the lease between the fee owner and the prime tenant under which the prime tenant’s relationship to the premises would have terminated on December 31, 1962 must, in the circumstances of this case, give way to the overriding provision of subdivision a of section 35 of the regulations.
The prime tenant argues that such a result would be inconsistent with the decision of the Appellate Division for this Department in Brause v. Parisi (274 App. Div. 469 [1st Dept. 1948]) and the decision of Mr. Justice Chimera of this court in Herman v. Girmac, Inc. (N. Y. L. J., June 7, 1961, p. 16, col. 7.) Both cases are factually different from the present case.
In the Brause case, the fee owner sought to evict the subtenants who were statutory tenants and to recover possession of the premises. The court held that the fee owner was barred from doing so under the rent regulations so long as the subtenants continued to pay their rent. In the case at bar, the fee owner is not seeking to evict the subtenants and does not seek to recover possession of the premises.
*849 In the Herman v. Girmac, Inc., case, the fee owner wanted possession and brought a summary proceeding to recover possession ; the prime tenant abandoned the premises as well as the furniture and furnishings. The court held that in the circumstances of that case the fee owner would have to continue to furnish the services to the roomers. In the case at bar, the fee owner does not seek to recover possession and the prime tenant wishes to take his furniture with him. While there is language in Herman v. Girmac, Inc., suggesting that a prime tenant can never be compelled to remain in possession, I do not think that language can properly be held applicable to the facts of the present case.
There remains the question of the extent of the relief to be granted and specifically whether this court shall now decide permanently which of the defendants shall continue to furnish the furniture and services to the roomers or whether it should be left to the Bent Administrator to decide on a permanent basis. It appears to me that this is a matter for the Bent Administrator to decide. The Local Emergency Housing Bent Control Act of 1962 (L. 1962, ch. 21) which authorizes the City of New York to take over the administration of rent controls provides that the Mayor “ shall establish or designate * * * agency of such city (referred to in this section as the ‘ city housing rent agency ’) to administer the regulations and control of residential rents and evictions within such city” (L. 1962, ch. 21, § 1, subd. 4). I think the whole scheme of the rent control laws and regulations contemplates that the Administrator shall administer them and shall make the appropriate decisions, subject to judicial review, rather than having the court in the first instance make the determinations. Indeed, I think the Administrator’s sound discretion is the most appropriate instrument for imposing conditions which will protect the interests of all parties. (Cf. regulations, § 54, subd. a.)
Accordingly, I believe that the injunction to be issued by this court shall be only such as is necessary to protect the rights of the roomers and the jurisdiction of the Bent and Behabilitation Administrator, until such time as an application can be made and acted upon by the Administrator to resolve the controversy.
I think the proper injunction to issue is merely one that will maintain the status quo. To permit the prime tenant to remove his furnishings and to require the fee owner to furnish the premises would, as a practical matter, leave nothing for the Bent Administrator’s discretion. Considerations of balancing the equities also require that the injunction be limited to maintaining the status quo. The prime tenant has now been in posses *850 sion operating the rooming house for almost 17 years. During all of that time, the premises have been subject to rent control. During all of that time, he was at least on constructive notice that his relation to the premises was not entirely one of contract and that he might be required by the Bent Administrator to continue to furnish the services and furniture when he no longer wished to do so. On the other hand, the fee owner is an elderly woman who has not been in possession for 17 years. To require her now to make an investment of several thousands of dollars and to go into the rooming house business would obviously be a great hardship on her. Balancing the hardships on the two parties, I think that at least until the Bent Administrator can determine the case the lesser hardship is to require the prime tenant to continue to furnish the furniture and services. (I am of course not here passing on the rent obligations as between fee owner and prime tenant.)
But I do not think that the parties should be left in suspense forever. The Bent Administrator was notified in December that the prime tenant intended to move out. The parties are entitled to a prompt determination by the Bent Administrator. If the Bent Administrator does not render a reasonably prompt decision on an application made by either the prime tenant or the fee owner, either to discontinue the furnishing of services and furniture or to withdraw the premises from the rental market, the parties should have a right to apply to this court to modify or vacate the injunction. (I do not exclude the possibility of action by the Bent Administrator on her own initiative or that of one of her subordinates. See regulations, § 82.)
Accordingly, an injunction will issue restraining the defendant Samuely, the prime tenant, from removing his furniture or discontinuing the furnishing of services except pursuant to an order of the Bent Administrator (rendered either originally or on judicial review) permitting the same, and restraining the defendant Eichner, the fee owner, from interfering with defendant Samuely’s furnishing of such services and furniture, again except pursuant to such an order of the Bent Administrator. In the event that the Bent Administrator does not render a decision on the application of either party for such relief or other relief appropriate to resolving the present controversy within a reasonable time, such party may apply to this court, at the foot of the decree, for a modification or vacation of the injunction, and jurisdiction is reserved for such purpose. The court will receive suggestions on the settlement of the judgment as to what constitutes such a reasonable time.
No costs are awarded.